IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JAN - 6 2016

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:16-mj-006 |
| EMILY LYNN MORGAN, | ) |
| | ) |
| Defendant. | ) |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

### I. IDENTITY OF THE AFFIANT

I, Brittany J. Maher, being duly sworn, hereby state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since August 2014. Since January 2, 2015, I have been assigned to a white-collar-crime squad at the Washington Field Office, Northern Virginia Resident Agency in Manassas, Virginia. The squad specializes in the investigation of healthcare-fraud offenses committed in Northern Virginia, including pharmaceutical drug diversion and prescription fraud.

2. I am working directly with other special agents who have extensive experience in criminal investigations and investigative techniques utilized by law enforcement, including but not limited to the purchase of narcotics as evidence of drug trafficking. These agents also are familiar with the techniques and methods by which drug traffickers transport and distribute controlled substances and conceal the proceeds they derive from the sale of narcotics. I also am familiar with the use, effects, appearance, and methods of manufacture of controlled substances.

## II. REASON FOR AFFIDAVIT

3. This affidavit is made in support of a criminal complaint and arrest warrant charging EMILY LYNN MORGAN with conspiring to distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance; oxycodone, a Schedule II controlled substance; and alprazolam, a Schedule IV controlled substance—all in violation of Title 21, United States Code, Sections 841(a)(1) and 846—from in or about May 2014 to in or about May 2015.

4. The facts and information contained in this affidavit are based upon my personal knowledge of the investigation, the observations of other law-enforcement officers, and information from a confidential informant. This affidavit is not intended to include each and every fact and matter observed by me or known to the government relating to the subject matter of this investigation. Instead, this affidavit contains only those facts that are necessary to establish that probable cause exists to arrest MORGAN for conspiracy to unlawfully distribute controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) and 846. This application seeks approval for the issuance of a criminal complaint charging MORGAN with this criminal statute, as well as a warrant authorizing her arrest.

## III. BACKGROUND

### A. DRUG TRAFFICKERS

5. Drug traffickers frequently transport narcotics and narcotics proceeds on their person when traveling to and from the location of a transaction. Drug traffickers also store other property relating to their drug-trafficking business on their person, including cellular phones, writings, books, receipts, business ledgers, lists, notations, airline tickets, money-order transfers, and other memoranda and/or papers relating to their drug trafficking.

6. It is quite common for those persons involved in the unlawful manufacture, sale, purchase, and transportation of controlled substances to generate and maintain writings, books, receipts, business ledgers, lists, notations, airline tickets, money-order transfers, and other memoranda and/or papers to assist in their criminal enterprise. These materials are created and maintained in much the same way and for the same reasons as persons involved in legitimate business keep similar materials.

7. Persons involved in the sale and purchase of controlled substances frequently will keep materials memorializing past transactions, the status of accounts, inventories, income, expense records, and the like, all of which are relevant to determining, among other things, whether one or more persons possesses controlled substances for sale.

8. Drug traffickers commonly maintain addresses or telephone numbers in books or papers that reflect names, addresses, and telephone numbers for their drug associates. Drug traffickers also frequently take or cause to be taken photographs of themselves, their associates, their property, and their product, and these traffickers frequently maintain these photographs in their possession and in their residences. In addition, drug traffickers sometimes use computers and electronic storage devices to list associates and keep track of debts, product on hand, drug proceeds, names, addresses, and telephone numbers of their associates. Finally, drug traffickers sometimes use firearms to protect their drugs and drug proceeds.

9. Drug traffickers rely upon timely telephonic communications to coordinate drug deals, such that drug traffickers use telephones—often cellular telephones—to communicate with associates and co-conspirators in conducting narcotics transactions. When using cellular telephones, drug traffickers sometimes leave voicemail or text messages regarding their illegal activities. Cellular telephones often contain "telephone books" that reflect names, addresses,

and/or telephone numbers of associates in the narcotics-trafficking scheme and of narcotics customers. Cellular telephones also often keep track of recent outgoing and incoming telephone numbers. The cellular telephones used by drug dealers are sometimes subscribed to in fictitious and/or other individuals' names.

### B. RELEVANT CONTROLLED SUBSTANCES

#### i. Heroin

10. Heroin is a highly addictive opioid processed from morphine, a naturally occurring substance extracted from certain varieties of poppy plants. Heroin is typically sold as a white or brownish powder, or as a black sticky substance also known as "black tar heroin." It is common for street dealers to refer to the standard brown heroin as the "brown." Heroin can be injected, smoked, or sniffed/snorted, and because it enters the brain rapidly it is particularly addictive, both physically and psychologically. The Drug Enforcement Administration ("DEA") classifies heroin as a Schedule I substance, which means that it currently has no accepted medical use and is among the most dangerous drugs of all the drug schedules with potentially severe psychological or physical dependence.

#### ii. Oxycodone

11. Oxycodone is a commercially available pharmaceutical narcotic analgesic that is used to treat moderate to severe pain and is available only with a prescription written by a licensed medical practitioner acting in the usual course of his or her professional practice. Oxycodone is classified as a Schedule II controlled substance by the DEA. A Schedule II controlled substance is one that has a high likelihood of causing severe psychological and physical dependence in users and has a high potential for abuse. Oxycodone is the active ingredient in the brand-name drugs OxyContin and Roxicodone.

12. Based upon my training and experience, oxycodone is abused by drug addicts in various ways to achieve a heroin-like high. These forms of abuse include crushing the pills to be snorted, dissolving the pills in liquid to inject or "shoot" intravenously, and smoking the pills by heating the pills on aluminum foil and inhaling the smoke. Oxycodone pills are frequently sold illegally by individuals who obtain them by prescription, with the street value of the pills being approximately $1.00 per milligram. For example, an oxycodone 30-milligram pill typically can be sold on the street for approximately $30.00 per tablet. Generic oxycodone 30-milligram tablets are light blue in color and commonly are referred to as "blues."

### iii. Alprazolam

13. Alprazolam is a benzodiazepine. According to the DEA, benzodiazepines, Schedule IV depressants, are a class of drugs that produce central-nervous-system depression and most commonly are used to treat insomnia and anxiety. A potential for dependence upon and abuse of benzodiazepines exists in particular for individuals with a history of multi-substance abuse. The prescription medication Xanax contains the active ingredient alprazolam and is one of the five most prescribed and most frequently encountered benzodiazepines on the illicit market.

### IV. INVESTIGATION

#### A. OVERVIEW

14. EMILY LYNN MORGAN is part of a network of individuals in the Northern Virginia Region distributing heroin, oxycodone, and alprazolam. FBI surveillance units have observed activity consistent with distribution to buyers in the Northern Virginia region within the Eastern District of Virginia. An FBI Confidential Informant ("CI-1") has made five controlled purchases from MORGAN, beginning on or about January 22, 2015 until on or about February

20, 2015. CI-1's information, surveillance, and other investigative means have revealed that MORGAN is connected to other individuals, known and unknown, including co-conspirator MICHAEL MARTIN, who is believed to be one of MORGAN's suppliers of oxycodone and heroin.

### B. FIVE CONTROLLED PURCHASES WITH CI-1

#### i. January 22, 2015

15. On or about January 22, 2015, Special Agents of the FBI, along with CI-1, conducted a controlled purchase of oxycodone from MORGAN. CI-1 was observed meeting with MORGAN, who parked at a gas pump at the BP gas station located at 5000 Wilson Boulevard, Arlington, Virginia, which is within the Eastern District of Virginia. CI-1 was observed getting into the passenger side of MORGAN's vehicle, a silver Toyota SUV bearing Virginia license plate WNK3961 that was registered to Kim Mcginty Morgan, according to the National Crime Information Center ("NCIC"). CI-1 exchanged $600 of government funds for 20 round blue tablets imprinted with "K 9" on one side from MORGAN. Web-based drug-identification guides showed that the markings on these tablets are consistent with 30-milligram oxycodone tablets.

#### ii. January 29, 2015

16. On or about January 29, 2015, Special Agents of the FBI, along with CI-1, conducted another controlled purchase of oxycodone from MORGAN in the parking lot of a Wal-Mart located at 1400 Worth Avenue, Woodbridge, Virginia, which is within the Eastern District of Virginia. CI-1 was observed getting into MORGAN's vehicle, a white Nissan Altima with Virginia license plate VAW6961. CI-1 exchanged $600 of government funds for 20 round blue tablets, which had markings consistent with 30-milligram oxycodone tablets. When

debriefed, CI-1 stated that MORGAN had the tablets hidden under her bra strap. Additionally, CI-1 stated that MORGAN had a child, approximately 18 months old, in a car seat located in the back of her vehicle during the exchange.

17. After the exchange with CI-1, FBI surveillance units observed MORGAN meeting with three unidentified subjects at three separate locations with the child still in her vehicle. Each meeting was brief, lasting no more than approximately 10 minutes. First, MORGAN met with an unidentified subject (UNSUB 1) at the Exxon gas station located at 1300 Worth Avenue, Woodbridge, Virginia. After meeting with UNSUB 1, MORGAN drove across the street to a parking lot in the vicinity of a Game Stop retailer located at 13277 Worth Avenue, Woodbridge, Virginia. UNSUB 1 traveled in a black Kia to the same location to meet with MORGAN and was observed interacting with MORGAN at the window of her vehicle. MORGAN and UNSUB 1 departed the location in their respective vehicles, at which point MORGAN travelled to a Sunoco gas station located at 2495 Prince William Parkway, Woodbridge, Virginia. There, MORGAN parked her vehicle in the vicinity of the gas pumps, did not purchase gas, and was observed meeting with another individual, UNSUB 2, for approximately five minutes. MORGAN then departed Sunoco and travelled to a parking lot in the vicinity of a Starbucks located at 2447 Prince William Parkway, Woodbridge, Virginia. MORGAN remained in her vehicle for approximately 10 minutes before meeting with an individual, UNSUB 3, who arrived by vehicle and got into the passenger side of MORGAN's vehicle. After several minutes, UNSUB 3 got out of MORGAN's vehicle, and MORGAN departed. From there, MORGAN drove behind a Wells Fargo and strip mall located at 2876 Dale Boulevard, Dale City, Virginia, at which point MORGAN could not be located and

surveillance was terminated. All of the locations described above were located within the Eastern District of Virginia.

### iii. February 4, 2015

18. On or about February 4, 2015, Special Agents of the FBI, along with CI-1, conducted a controlled purchase of oxycodone and alprazolam from MORGAN in the parking lot of the Wal-Mart located 1400 Worth Avenue, Woodbridge, Virginia. CI-1 was observed communicating with MORGAN while standing outside of MORGAN's vehicle, the same white Nissan Altima bearing Virginia license plate VAW6961. CI-1 exchanged $220 of government funds for tablets alleged to be Xanax and oxycodone from MORGAN. Five of the tablets were bar shaped; two of the five tablets were green and imprinted with "S 90 3," and three tablets were yellow and imprinted with "R039." Web-based drug-identification guides revealed that these five tablets had markings and coloring consistent with 2-milligram alprazolam. Additionally, 17 of the tablets were round, pink in color, and imprinted with "12" on one side and "NP" on the other side. Online sources revealed that these tablets had markings consistent with 10-milligram oxycodone hydrochloride tablets. After the exchange between MORGAN and CI-1, FBI surveillance units followed MORGAN back to 15818 Donald Curtis Drive, Woodbridge, Virginia. A check of public records revealed that this residence is associated with W.M. and S.H. MORGAN told CI-1 that she was residing with her brother, who is believed to be W.M.

### iv. February 13, 2015

19. On or about February 13, 2015, Special Agents of the FBI, along with CI-1, conducted a controlled purchase of oxycodone and heroin from MORGAN. Prior to the meeting, FBI surveillance units observed MORGAN and co-conspirator MICHAEL MARTIN in

MORGAN's vehicle drive to the office of Jeffery Nekoba, MD, located at 7489 Huntsman Boulevard, Springfield, Virginia. MARTIN was observed entering the medical practice.

20. I reviewed a Patient Utilization Report generated from the Virginia Prescription Monitoring Program (PMP) which revealed that MARTIN is a patient of, and has been prescribed 30-milligram oxycodone tablets by, Dr. Nekoba. According to the PMP report I reviewed, Dr. Nekoba issued a prescription to MARTIN for 90 tablets of 30-milligram oxycodone that day.

21. After departing Dr. Nekoba's office, MORGAN and MARTIN drove to the vicinity of 8988 Lorton Station Boulevard, Lorton, Virginia, which is within the Eastern District of Virginia. MORGAN parked the car, and MARTIN left the car and returned approximately 10 minutes later. KC Pharmacy is located at 8988 Lorton Station Boulevard, Suite 102. The PMP report I later reviewed for MARTIN showed that he filled the prescriptions for 90 tablets of 30-milligram oxycodone at KC Pharmacy in that location.

22. From there, MORGAN and MARTIN drove to the vicinity of 8629 Eagle Glen Terrace, Lorton Station, Virginia. A check of NCIC revealed that location to be the address on file for MARTIN. Approximately five minutes later, MORGAN was observed departing the same location alone. MORGAN then drove 15818 Donald Curtis Drive, Woodbridge, Virginia, which is believed to have been her residence at the time. Around that time, MORGAN sent a communication to CI-1 indicating, "I have it all." This was after communications finalizing CI-1's request for "20 blue and 3 of the brown," which CI-1 explained to mean 20 tablets of 30-milligram oxycodone and 3 grams of heroin. Approximately 30 minutes later, MORGAN was observed departing 15818 Donald Curtis Drive, Woodbridge, Virginia; surveillance was then terminated and units relocated to the controlled-buy location.

23. A controlled purchase was then conducted in the parking lot of the Wal-Mart located at 1400 Worth Avenue, Woodbridge, Virginia. CI-1 was observed standing outside of MORGAN's vehicle, the white Nissan Altima bearing Virginia license plate VAW6961, and communicating with MORGAN, who was a passenger in the vehicle. The driver of the vehicle later was identified by CI-1 as MARTIN from a photo lineup. MORGAN and MARTIN then departed the area. CI-1 exchanged $1,020 of government funds for 20 round blue tablets with "M" inside of a box on one side and "30" on the other side, as well as three small zip-lock bags containing a brown solid substance. Online research revealed that the tablets had markings consistent with 30-milligram oxycodone tablets. The brown solid substance weighed 2.9 grams and field tested positive for heroin using an opiates reagent test kit.

### v. February 20, 2015

24. On or about February 20, 2015, Special Agents of the FBI, along with CI-1, conducted a controlled purchase of heroin from MORGAN. CI-1 was observed getting into the passenger side of MORGAN's vehicle, which was parked next to a gas pump at the Parkway Express gas station located at 8105 Loisdale Road, Lorton, Virginia, within the Eastern District of Virginia. CI-1 exchanged $700 of government funds for one small bag containing a light-brown solid and powdery substance from MORGAN. After the exchange, MORGAN departed the area. The substance weighed 5.4 grams and field tested positive for heroin using an opiates reagent test kit.

## V. OTHER RELEVANT EVIDENCE

25. MORGAN previously was utilized as a confidential source by the FBI in connection with her drug-trafficking activities, including in relation to MARTIN. At the outset of her relationship with the FBI, MORGAN was admonished by the FBI that she was prohibited

from engaging in any illegal activity and was required to report communications with any subject of the FBI's investigation. Despite these warnings, MORGAN engaged in illegal activity by selling controlled substances outside of her relationship with the FBI and also failed to report certain communications that she had with MARTIN. Notably, during her undisclosed communications with MARTIN, MORGAN attempted to obstruct and, in fact, did obstruct the ongoing investigation of MARTIN by instructing him, in a text message using a cellular phone that was not being monitored by the FBI, to respond to her in a text message to her other cellular phone, which was being monitored by the FBI, that he had no more drugs to sell, which representation was false.

26. Based upon her Facebook postings, MORGAN is currently pregnant and due to give birth to her second child in or about February 2016. Evidence gathered to date reveals that MORGAN was still using both crack-cocaine and heroin at least as of late May 2015.

## VI. CONCLUSION

27. Based upon the foregoing, probable cause exists that within the Eastern District of Virginia and elsewhere, EMILY LYNN MORGAN conspired to distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance; oxycodone, a Schedule II controlled substance; and alprazolam, a Schedule IV controlled substance—all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

28. Wherefore, I respectfully request that this Court issue a criminal complaint charging EMILY LYNN MORGAN with violations of Title 21, United States Code, Sections 841(a)(1) and 846, as well as an arrest warrant authorizing her arrest.

_____
Brittany J. Maher
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me
this 6th day of January 2016

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge
The Honorable Michael S. Nachmanoff
UNITED STATES MAGISTRATE JUDGE