**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CASE NO. 1:16-MJ-006 |
| | : | |
| **EMILY LYNN MORGAN,** | : | (Judge Anderson) |
| | : | |
| **Defendant** | : | |

**MOTION FOR
<u>RECONSIDERATION OF DETENTION ORDER</u>**

Emily Morgan, by counsel, moves the Court to reconsider the Detention Order Pending Trial issued on January 11, 2016 for the reasons stated below.

1. **Background**

As the Court may recall, the hearing on January 11, 2016 was not a typical bail hearing. It was focused almost entirely on whether the Alexandria Jail could provide adequate medical care for Ms. Morgan in view of the fact that she is expected to give birth to her second child at the end of this month or the first week in February. Both the government and Ms. Morgan's counsel wanted to do what is best to safeguard Ms. Morgan's health and that of her unborn child. The issue of whether there is any condition or combination of conditions that will reasonably assure the court of the

1

safety of the community was not even addressed at the hearing.[1] The Court's detention order states that the Court "will reconsider this decision following the filing of a motion to reconsider."

As counsel stated during the January 11th hearing, he did not have enough time to become apprised of Ms. Morgan's medical situation prior to the hearing. Moreover, the government undertook to use its best efforts to ensure that the Alexandria Jail would provide appropriate medical care and monitoring of Ms. Morgan's condition. Unfortunately, as counsel learned in the past eight days, the Alexandria Jail has not been able or willing to provide appropriate medical care for Ms. Morgan. Counsel has brought this dire situation to the attention of the government and has received no response. So he has no choice but to seek reconsideration of the Court's January 11th decision at this time.

2.   **Ms. Morgan's Medical Condition**

Ms. Morgan's *life is in danger* if she does not receive proper medical care until her delivery. Two years ago, she gave birth to her first child, Camden. He was delivered by an exceptionally difficult caesarean operation that occupied multiple

---

[1] The government suggested that Ms. Morgan was a danger to herself and her unborn child because of her history of drug abuse, not a danger to the safety of the community. Facts subsequently learned by counsel have led him to believe that Ms. Morgan is not currently a danger to herself or to her unborn child either. No one has suggested that Ms. Morgan is a flight risk.

surgeons for about three and half hours. (A typical caesarean delivery takes only about 30 minutes.) At that time and later, she was warned not to get pregnant again for at least two years in order to give her innards a chance to fully heal. She became pregnant in less than two years but was not aware of her pregnancy until July 2015. She must have another caesarean delivery. She has been told by her doctors that she *must not go into labor* because it could rupture her weak uterus, killing her and her unborn child *in minutes*, before she could even get to a hospital.

At the time of her arrest, Ms. Morgan had already scheduled *eight separate visits* to the OB/GYN department of Kaiser Permanente in Tyson's Corner. These visits were deemed necessary by the OB/GYN specialists at Kaiser to adequately monitor her life-threatening condition prior to her caesarean.

### 3. The FBI Agents' Concerns

The two FBI agents had concerns that Ms. Morgan might be abusing her legal prescriptions for xanax (an anti-anxiety drug) and subutex (a safer substitute for methadone, which she was previously taking), and thus endangering the unborn child's health. That is why they wanted her to be detained at the jail rather than released to the third party custody of her mother.

Counsel does not believe that Ms. Morgan will abuse these prescription drugs if released. First, she says she has gotten over her need for xanax because she didn't get any of those pills at the jail — despite the danger posed by suddenly taking her off

the drug entirely. Second, she was told by one of her doctors that taking up to one pill of subutex daily poses no danger to her unborn child; and she was not consuming more than one pill a day before her arrest, despite the fact that her prescription was for three pills a day. If the Court is concerned about that discrepancy, her prescription can be changed to one pill daily.

### 4. Lack of Care at the Alexandria Jail

The Alexandria Jail does not have a full time doctor on duty. An outside, contract doctor visits the jail on certain days of the week. That doctor is not an OB/GYN specialist. One of the nurses in the medical unit at the jail told Ms. Morgan that the unit was "understaffed." Perhaps that explains why Ms. Morgan has only been allowed to take two showers since she arrived at the jail, despite the fact that inmates are supposed to get a shower each day; why she is being held in an isolation cell with nothing to read except a Bible; why she has not been able to go to the commissary to buy food or even a toothbrush or a bra; and why she is not able to make a phone call except in the wee hours of the morning when everyone she wants to call is asleep.

Counsel was told by the government that Ms. Morgan had an OB/GYN appointment outside the jail at a clinic with an ultrasound machine on Friday, January 15, 2016. But Ms. Morgan was never taken to the clinic and there was no explanation as to why.

She has seen the contract doctor at the jail only one time. Ms. Morgan will testify at the hearing about the nature of that one visit from the jail doctor.

What is most disturbing to counsel is this: the jail nurses are forcing Ms. Morgan to swallow an entire subutex pill *three times* a day against her will. This is being done despite Ms. Morgan informing them that taking more than one such pill a day endangers her and her baby. Ms. Morgan also told them that undersigned counsel had instructed her not to swallow more than one such pill a day, preferably broken down into 1/4, 1/4 and ½ quantities consumed at three different times. The nurses didn't care. They continued to insist that she take three subutex pills a day. Earlier, she was only being given 1/4 of one subutex pill at the jail and suffering from that. So the medical unit went from giving her too little to far too much subutex. The FBI and Ms. Morgan had asked the jail to give her one subutex pill a day. The jail medical unit couldn't get it right. The jail medical unit is too incompetent, rigid and understaffed to care properly for Ms. Morgan.[2] Ironically, in view of the FBI agents' concerns, Ms. Morgan is being forced *by the jail medical unit*, to take three times as much subutex as she needs or wants, thus endangering her and her unborn child.

---

[2]Counsel has dealt with the Alexandria jail medical unit for decades and has always been appalled by the lack of adequate care there and the lack of concern shown by the jail authorities, especially for federal detainees. The unwritten policy of the jail seems to favor delaying treatment until the inmate goes to a federal prison, where the federal government will pay for medical treatments.

### 5. What Will Happen After the Child is Delivered?

There is another big problem caused by Ms. Morgan's detention. What will become of her child when it is born? Who will take care of it if not Ms. Morgan? Both mother and child will be far better off if they can remain together at least for several months before Ms. Morgan goes to prison.

### 6. Conclusion

Common sense tells one that Ms. Morgan will be better off and far less "at risk" from her difficult pregnancy at home with her mother and/or Wes Martin, the caring father of the unborn child, with access to her OB/GYN doctors at Kaiser in Tyson's Corner than in isolation at the understaffed jail with nothing to read or do except worry, and no access to appropriate medical care, testing and monitoring. This appears to be a no-brainer.

The Court should therefore release Ms. Morgan on reasonable conditions as soon as possible. That was the recommendation of Pre-Trial Services.

        Respectfully submitted,

        */s/ David B. Smith*
        David B. Smith
        VA Bar No. 25930
        Smith & Zimmerman, PLLC
        108 North Alfred Street
        Alexandria, Virginia  22314
        (703) 548-8911 / Fax (703) 548-8935
        dsmith@smithzimmerman.com
        *Counsel for Defendant*

## **Certificate of Service**

I hereby certify that on the 19th day of January, 2016, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

> SAUSA Anna G. Kaminska
> Office of the United States Attorney
> 2100 Jamieson Avenue
> Alexandria, Virginia  22314
> anna.g.kaminska@usdoj.gov

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

> */s/ David B. Smith*
> David B. Smith
> VA Bar No. 25930
> Smith & Zimmerman, PLLC
> 108 North Alfred Street
> Alexandria, Virginia  22314
> (703) 548-8911 / Fax (703) 548-8935
> dsmith@smithzimmerman.com
> *Counsel for Defendant*